#### UNITED STATES DISTRICT COURT
#### EASTERN DISTRICT OF KENTUCKY
#### SOUTHERN DIVISION
#### PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>V.<br><br>JOSHUA LAWSON,<br>    Defendant. | CRIMINAL ACTION NO. 7:17-14-KKC<br><br><br>**OPINION AND ORDER** |

*** *** ***

This matter is before the Court on the parties' briefing regarding restitution. (DE 41 and 44.) For the reasons stated below, no restitution is awarded with respect to the victim identified as "Tara," and Defendant shall pay restitution in the amount of $7,500 to the victim identified as "Chelsea."

## I. BACKGROUND

Defendant pleaded guilty to one count of production of child pornography in violation of 18 U.S.C. § 2251 and two counts of distribution of child pornography in violation of 18 U.S.C. § 2252(a)(2). (DE 24, Plea Agreement.) Defendant was sentenced to a total of 420-months imprisonment and 20 years of supervised release. (DE 38, Judgment.)

Two victims of the Defendant, identified as "Chelsea" and "Tara," submitted requests for restitution prior to sentencing. Tara's request does not state a specific amount of restitution requested from the Defendant, but she states that her "unreimbursed" loss amount is $18,136.40. (DE 43 at 5.) The United States contends that while Chelsea and Tara are both "victims" eligible for restitution, it "cannot recommend a restitution order with respect to

1

Tara because her request does not sufficiently identify outstanding loss amounts that are compensable under federal law." (DE 41 at 1-2.)

The parties submitted briefs regarding restitution. The United States requests that the Court order the Defendant to pay $7,500 in restitution to Chelsea. Defendant agrees that Tara should not receive any restitution. However, the Defendant objects to any award of restitution as it relates to Chelsea. He asserts that the restitution figures cited by Chelsea are based on assumptions and inferences rather than on direct or indirect evidence. He concludes that "he does not believe the standards of proof contained in the statute and as argued by the government [are] in fact valid." (DE 44 at 3.)

Below, the Court determines that Tara should not receive any restitution from the Defendant. However, the Court finds that Chelsea is entitled to restitution in the amount of $7,500. The Court finds that this amount is appropriate and reflective of the Defendant's role in the process underlying Chelsea's losses.

## II. ANALYSIS

### A. Standard of Review.

Under 18 U.S.C. § 2259, restitution to victims of certain child exploitation offenses, including possession and distribution of child pornography, is mandatory. 18 U.S.C. § 2259(c)(3). Children who are depicted in child pornography meet the statutory definition of "victim" for purposes of restitution. *Id.* § 2259(c)(4). *See, e.g.*, *United States v. Kearney*, 672 F.3d 81, 95 (1st Cir. 2012) ("Every circuit to consider the matter has found that those depicted by child pornography are 'victims' of the crimes of possession and distribution within the meaning of § 2259(c)."); *see also United States v. Hargrove*, 714 F.3d 371, 374-75 (6th Cir. 2013) (citing *Kearney* with approval). The restitution order must direct the Defendant to pay "the full amount of the victim's losses," which includes: (A) medical services relating to

2

physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense. *Id.* § 2259(c)(2). Restitution is only proper, however, "to the extent the defendant's offense proximately caused a victim's loss." *Paroline v. United States*, 572 U.S. 434, 448 (2014). A loss is the proximate result of an offense where there is (1) proximate causation and (2) causation-in-fact. *Id.* at 449. Proximate causation is a flexible concept that requires "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* at 444 (internal quotation marks omitted). In child pornography cases, "costs of treatment and lost income resulting from the trauma of knowing that images of … abuse are being viewed over and over" are "losses" that are direct and foreseeable results of child pornography crimes. *See id.* at 449. Causation-in-fact does not require traditional "but-for" causation. Instead, in child pornography cases, tort-law principles of "aggregate causation" apply because the victim suffers losses from the ongoing trade of her images and the defendant is "part of the overall phenomenon" that causes such losses. *See id.* at 457. Thus, "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458. The amount of restitution awarded should not be severe, token, or nominal. *Id.* at 459.

Courts should use "discretion and sound judgment" to assess "the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id.* There are various factors that a court might consider, including:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders

3

involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id*. at 460. The government bears the burden of proving the victim's loss. *Id*. at 443; 18 U.S.C. §§ 2259(b)(2) and 3664(e).

### B. Defendant's Conduct.

In the present case, Defendant has agreed, via his Plea Agreement, that all victims of his relevant conduct qualify as victims under the Crime Victims' Rights Act, regardless of the count of conviction. (*See* DE 24, Plea Agreement.) (*See also* Presentence Investigation Report ¶¶ 24, 26.) Thus, the Court must first determine whether the victims' reported losses are sufficiently connected to the Defendant's actions. Then, the Court must determine the amount of restitution that is proportionate to the Defendant's role in the causal process producing the victims' losses.

Defendant possessed seventeen video files and three image files of child pornography depicting Tara and one video file of child pornography depicting Chelsea. Thus, Tara and Chelsea are both victims of the Defendant. *See Paroline*, 572 U.S. at 461-463 (confirming that children depicted in images of child pornography are the victims of those who possess such images and finding that a victim was entitled to restitution from the defendant who possessed her images).

Although both Tara and Chelsea are victims that appear to have suffered loss from the Defendant's possession of their videos and images of child pornography, since Tara has reported receiving restitution awards that satisfy the reported amount of compensable loss, the government recommends that she does not receive restitution from the Defendant. With respect to Chelsea, however, the government recommends that the Defendant be ordered to pay $7,500.

4

Defendant agrees that Tara should not receive restitution. However, he objects to any award of restitution to Chelsea.

### C. Calculation of Tara's Losses.

Tara's restitution request reports a loss of $37,008.78. She indicates that $18,872.38 has been "reimbursed" in previous restitution payments. Thus, $18,136.40 is outstanding in "unreimbursed expenses." (DE 43 at 5.)

Under § 2259, the losses considered in determining restitution are those that are the proximate result of the Defendant's conduct. *See Paroline*, 572 U.S. at 448. Tara's request reports a $22,400 loss described as a "loss of home due to unsafe location (harassment toward victim)." (DE 43 at 5.) As described by the government "[t]he victim impact statement indicates that Tara and her mother were forced to leave their house when she was under 12 years old because of harassment directed at that house, including breaking windows and sending sexually explicit items to Tara, and law enforcement 'was unable to track the perpetrators.'" (DE 41 at 6.) The United States contends that this loss should not be included in the calculation of Tara's general losses because she does not indicate how the Defendant's actions contributed to this loss. (DE 41 at 6.)

Here, the victim does not provide any indication of how the Defendant's conduct contributed to the loss reported, and thus, the Court finds that it should not be included in the calculation of Tara's general losses. After subtracting the $22,400 reported loss, Tara's losses do not exceed the restitution she has already received. Accordingly, the Court, with respect to Tara, does not have a record loss on which to order restitution. As such, the Court will not further consider her restitution request.

### D. Calculation of Chelsea's Losses.

Chelsea requests restitution in an amount "not less than $10,000." (DE 41-1 at 1.) In support of Chelsea's losses, she submits a psychological evaluation from Dr. Gregory Hale

5

that explains the various mental health treatment that Chelsea will require for the next twenty years. (DE 41-1 at 5-17.) The report states that she will incur approximately $176,375 in medical service expenses. The government asserts that restitution "is appropriate for these losses because Dr. Hale's evaluation ties this necessary treatment to the trauma caused by both her underlying abuse and the 'on-going distribution of her sexual photographic images reportedly exchanged throughout the world, including hundreds of individuals arrested in the United States with her images.'" (DE 41 at 7.) The Court agrees.

Dr. Hale also reports that Chelsea is expected to have between $50,000 to $100,000 in "educational costs due to … psychiatric problems." (DE 41-1 at 9.) Educational costs, however, are not a specific category of loss enumerated in § 2259(c)(2). The government asserts that it "does not believe the record supports including this amount as part of Chelsea's general losses under § 2259(c)(2)(F)'s catchall provision." (DE 41 at 7.) The Court agrees and finds that the link between the harm caused by the ongoing trade of child pornography depicting Chelsea and her need for educational costs is not evident from the record. As the government states: "Chelsea's obtaining an education may require particular services due to the aggregate harm she suffers and to which the Defendant has contributed, but those services have not been adequately defined and disaggregated from educational costs that any student would incur." (DE 41 at 7.) Thus, these costs will not be further considered.

An affidavit from Chelsea's attorneys notes that the losses articulated in Dr. Hale's report are based on future, anticipated expenses for twenty years. Her attorneys assert that her expenses may extend well beyond the twenty-year-period. Her attorneys thus contend that "Chelsea's other total covered losses may be found by the Court to be at least twice $226,375 to $276,375; at $452,750-$552,750." (DE 41-1 at 21.) There is no justification offered for why doubling the loss range reported by Dr. Hale would be appropriate. Thus, the Court will not consider the doubled figure.

The affidavit of Chelsea's attorneys also estimates $4,625 in "legal fees and expenses proximately cause by this Defendant." The affidavit breaks down various costs categorized as "'But For' Direct Attorneys' Fees & Expenses." The calculation reflects a $400 hourly rate for partner work and $150 hourly rate for paralegal work. While attorneys' fees are certainly an appropriate consideration in awarding restitution, *see* 18 U.S.C. § 2259(c)(2)(E), as further explained below, the Court finds that the estimates provided by Chelsea's attorneys are not reasonable.

### E. Applying *Paroline* and Determining Restitution.

In determining the restitution required, the Court considers the various *Paroline* factors and the arguments articulated by the parties. The Court finds that Chelsea is entitled to restitution in the amount of $7,500.

First, the Court considers the number of past criminal defendants found to have contributed to Chelsea's general losses and the number of potential future offenders likely to be caught and convicted. The United States represents that it "cannot provide a reliable estimate of the number of past criminals who have possessed, distributed, or received child pornography images of a particular victim, including Chelsea" nor can it "provide a reasonable prediction of the number of future offenders likely to be caught and convicted[.]" (DE 41 8-9.)

Next, the Court considers data providing an estimate of the broad number of offenders involved. National Center for Missing and Exploited Children ("NCMEC") reports show that as of March 31, 2018, files from the Chelsea series have appeared in 2,169 Child Identification Reports. As the government states, "[t]hese reports are relevant in that the widespread dissemination of images of both victims is intrinsic to the ongoing harm they suffer." (DE 41 at 9.) *See Paroline*, 572 U.S. at 449 (noting that "the victim's costs of treatment and lost income resulting from the trauma of knowing that images of her abuse are being viewed over

7

and over are the direct and foreseeable results of child-pornography crimes, including possession").

Next the Court considers the government's representation that it has "identified eight post-*Paroline* restitution orders from federal district courts with respect to Chelsea in amounts ranging from $1,000 to $10,000, with an average order of $4,672[.]" Although this does not represent a full picture of the restitution orders imposed, it provides "anecdotal information for the Court's consideration in determining an appropriate restitution amount that is neither severe nor nominal." (DE 41 at 10.)

Regarding the remaining factors articulated in *Paroline*, the Defendant possessed one video file involving Chelsea, and there is no information that the Defendant reproduced, distributed, or had any connection to the production of the child pornography involving Chelsea. The Court further considers that a single video file is comprised of many more individual images, and it creates an ongoing narrative of sexual abuse.

The Court also considers the recommendation of the United States regarding the appropriate amount of restitution to be awarded to Chelsea. The United States "believes [that Chelsea's] request appropriately reflects the Defendant's role in contributing to [her] general losses, but also reflects an estimate of legal expenses that is too high – nearly a one-to-one ratio between such fees and the remainder of the requested restitution (i.e., $4,625 in fees versus $5,375 remainder)." In support, the government cites to five cases in which the restitution amounts ordered to Chelsea were less than the legal expenses requested here. (*See* DE 41 at 11-12 (collecting cases).) The United States thus recommends a restitution order of $7,500.

The Court agrees with the government that the legal fees laid out in the affidavit from Chelsea's attorneys appear to be somewhat excessive. (*See* DE 41-1 at 20 (For example, the affidavit lists $600 for bookkeeping and accounting expenses.).) Additionally, some of the

entries are too speculative to warrant compensation. (*See* DE 41-1 at 20 (For example, the affidavit lists fees for preparing to oppose supervised release of the Defendant, notifying the client of the Defendant's release or supervised release, and obtaining location tracking on the Defendant after his release.).) The Court further finds that the attorneys' fees awarded should be considered in relation to the total award of restitution. A one-to-one ratio between Chelsea and her attorneys is improper. Instead, the court finds that a two-to-one ratio, like most standard contingency fee agreements, would be more appropriate.

Finally, the Court considers the objections to restitution filed by the Defendant. Defendant asserts that the figures cited by Chelsea are based on "assumptions and inferences [rather] than on direct or even indirect evidence." (DE 44 at 1.) Defendant additionally asserts that the evidence provided requires assumptions that "the images are in fact being viewed elsewhere other than the computer runs which may indicate 'hits,' and [the viewing had an] effect on an alleged victim." (DE 44 at 2.) Defendant notes that he is indigent and will spend approximately thirty years in prison.

Regarding the Defendant's objections, Chelsea's request for restitution is supported by medical evidence. (*See* DE 41-1 at 5-17.) Although the restitution request contains estimates of Chelsea's future medical services, it is her Doctor's recommendation that she engage in those services. (DE 41-1 at 5.) Additionally, Dr. Hale's evaluation ties this necessary treatment to the trauma caused by both her underlying abuse and the 'on-going distribution of her sexual photographic images reportedly exchanged throughout the world, including hundreds of individuals arrested in the United States with her images.'" Thus, the Court finds that Chelsea's request for restitution is sufficiently supported by relevant evidence. Additionally, with respect to Defendant's assertion that awarding restitution requires certain assumptions, the Court finds that argument to be inapposite. Although Chelsea's future trauma caused by the continued sharing of her images is a relevant consideration, the losses

listed are projections of services she will require based on her doctor's assessment of the trauma she has *already* suffered. Part of that trauma is attributable to the conduct of those who have viewed or shared her images, including the Defendant. Finally, while the Court is cognizant that the Defendant is indigent, the Defendant cites no precedent—and the Court is not aware of any such precedent—prohibiting restitution in cases where a defendant is indigent. (DE 44 at 2.) *See also* 18 U.S.C. § 3664 ("In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.")

In determining the amount of restitution to award to Chelsea, the Court considers Chelsea's request, Chelsea's supporting documentation, the United States' recommendation regarding restitution, the Defendant's objections to restitution, and the relevant *Paroline* factors discussed above. The Court finds that, based on the foregoing, $7,500 in restitution to Chelsea ($5,000 to Chelsea and $2,500 to her attorneys) is appropriate and reasonable. This amount is not severe, token, or nominal. Rather it reasonably reflects the Defendant's role in the causal process underlying Chelsea's losses.[1]

### III. CONCLUSION

For all these reasons, the Court **HEREBY ORDERS** as follows:

(1) No restitution will be awarded with respect to Tara because the Court does not have a record loss on which to order restitution;

(2) Based on a preponderance of the evidence, the Defendant shall pay restitution in the amount of $7,500 to Chelsea ($5,000 to Chelsea and $2,500 to her attorneys);

---

[1] This amount is also consistent with other post-*Paroline* restitution awards that have been ordered to be paid to Chelsea. (*See* DE 41 at 12 (collecting cases).)

(3) The judgment entered on May 8, 2018 is **AMENDED** to provide restitution in the amount of $7,500 to Chelsea; and

(4) Any payments to Chelsea shall be remitted according to the instructions provided in docket entry 43, page 24.

Dated July 17, 2020.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY